# Commonwealth ex rel. Love v. Reynolds.

Dec. 20, 1940.

Clarence Bartlett, Judge.

810

Herman Cohen and Lawrence S. Grauman for appellant.
Hubert Meredith and Sam T. Jarvis for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Some time in 1933 (the exact date not being shown by the record) John T. Reynolds, an outstanding citizen of Greenville, Kentucky, died testate, but the contents of his will are not shown herein. Prior thereto and in 1929 his wife and the appellee, Laura L. Reynolds, began to exhibit symptoms of mental impairment, and by the time of the death of her husband her affliction had advanced to the point where she was completely mentally incapable. She was, therefore, disqualified from

serving as executrix of her husband's will. Either on that hearing or one instituted about that time after an inquisition held for the purpose, her mental condition was adjudged as last indicated, and C. M. Martin—also a prominent citizen of the town—was appointed her committee. She owned—either in her right or through the will of her husband—property of a total valuation of about $200,000. Her committee took charge of her person and her property, looking after both with the utmost care and efficiency, which he continued to do up to April 17, 1936.

Mrs. Reynolds, it appears, left no issue—her nearest relative being the appellant, Charles L. Love, who is a brother. On April 17, 1936, he filed a petition in the Muhlenberg circuit court, in which the original inquisition was held, in which he set out the facts relative to his sister's mental condition and all others necessary under the law for the holding of an inquisition. He asked for the issuing of processes against his sister and Martin, her committee appointed under the 1933 proceedings, and all of which was based upon the theory that the latter proceedings were void because a jury was waived at its hearing and the facts by agreement were determined by the court. The later (1936) proceedings were inaugurated by appellant mainly, if not entirely, for the purpose of correcting that error. In such later proceedings two physicians were appointed, who examined Mrs. Reynolds and reported their findings to the effect that she was of unsound mind. Following that report a jury of twelve was impaneled, and after hearing the evidence they returned a verdict confirming the report of the two appointed physicians; whereupon judgment, based upon that verdict, was rendered, and the court again appointed the former committee, C. M. Martin, who executed bond, qualified and served in that capacity until his death occurring a few months thereafter.

Upon that fact being made known to the court, a settlement was made by Martin's personal representative, and M. L. Wickliffe was appointed committee in his stead, who likewise qualified and he, as was also Mr. Martin, his predecessor, was given the management of the *property* of Mrs. Reynolds as well as *custody* of her person. Mr. Wickliffe likewise discharged his duty as committeeman, with uprightness and perfection, but he

died shortly after his appointment, and his personal representative made a settlement of his fiduciary actions in the matter. The court then appointed the Fidelity and Columbia Trust Company of Louisville, Kentucky, as the committee succeeding Mr. Wickliffe, but limited its powers to looking after the management of her property, and placed her custody in the hands of P. R. Wickliffe, a citizen of Greenville, and each of them executed bond and qualified as such. The last inquisition above will be referred to as the "1936 inquisition." Following that inquisition both the estate of Mrs. Reynolds, as well as the care and attention given her by her custodian, were each conducted in such a manner as to justify no criticism, nor is any attempted to be made in the instant action or procedure.

On October 4, 1939, the same brother (appellant), as next friend to his sister, appeared in the Muhlenberg circuit court, and entered motion therein that the 1936 inquest (the one he instituted) be set aside and held for naught, and that the appointment of the various committeemen supra, in pursuance to that inquest—including the Fidelity and Columbia Trust Company the present one—be set aside for the same reason, and which reason was that neither Mrs. Reynolds, nor Martin, the person having her in charge, nor anyone for her, was summoned or in any manner notified of the proceedings resulting in the 1936 inquest, as is required by Section 216aa-72 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes. Response in the name of Mrs. Reynolds and her present committee, the Fidelity and Columbia Trust Company, was made to the petition, upon which that motion was based. The response denied the grounds of appellant's motion and pleaded his initiation of the 1936 inquest proceedings as an estoppel against his motion to set aside the order made therein. Affirmative matters not expressly denied by following pleadings were controverted of record, and upon trial the court overruled appellant's motion and adjudged that the 1936 inquisition was validly held, and that the statutory notice which appellant's motion denied was complied with at that hearing. From that judgment appellant prosecutes this appeal.

At the hearing of the instant motion considerable evidence was taken which was later transcribed by the court's stenographer, and her transcription thereof is

in the record brought here, but it was not approved by the court, nor was it ever filed in the record by any order of court, nor is there anything in the record showing that it was ever tendered to be filed, since no bill of exceptions of any character whatever appears in the case. The first argument, therefore, made by counsel for appellee, is that, since the record contains no bill of exceptions, nor any of the evidence heard at the trial, this appeal should be determined upon the sole issue made by the pleadings, and if they sustain the judgment appealed from it should be affirmed. That argument was and is a brick thrown by appellee's counsel which counsel for appellant was evidently unable to dodge, but he nevertheless attempted to do so by saying in his reply brief that: "Evidently Judge Bartlett did not regard the testimony taken as evidence heard orally in an equity action. He evidently regarded the testimony as testimony taken by deposition in a special proceeding where the certificate of the examiner or official reporter was sufficient to give verity and did not require the signature of the Judge. Otherwise what reason can be given for Judge Bartlett not signing the depositions taken by the official reporter?"

The excerpt constitutes the whole of the answer to the argument, and as will be seen, it is far from convincing. Regardless of the nature of the action—even equity actions where the witnesses testify in court—if the final judgment rendered in the cause is an appealable one and is brought to this court, the testimony heard at the trial taken on issues of fact raised by the pleadings must be brought here in the manner provided by law before it can be considered by us on the appeal, and if not done it will be presumed that the testimony heard at the trial supported the judgment from which the appeal is prosecuted. There is no rule of law more firmly settled in the practice than that one, not only in this court but in other jurisdictions of the Union so far as we have been able to discover. We need not refer to specific cases declaring and adhering to the rule as stated, since a long list of them is incorporated in the notes to Sections 334 and 335 of our Civil Code of Practice, as well as in Key Number System Nos. 544 to and including 548 in Volume II of West's Kentucky Digest, under the heading of "Appeal and Error." After deleting from the record the transcript of the

testimony made by the stenographer—which, as we have seen, has not been properly made a part of the record—we have nothing left but the pleadings, and the cases cited at the places indicated hold that it will then be presumed that the court found the facts to be sufficient to support the judgment that was rendered.

But it is argued by counsel for appellant that this procedure is a direct attack on the judgment rendered in the 1936 inquisition proceeding, and that in such an attack the record must show affirmatively that every fact necessary to confer upon the court jurisdiction existed or had been followed. The argument is then made that the record of the 1936 inquisition nowhere showed (at the time of the trial of this motion) the issuing of any summons or other sort of notice for or service upon Mrs. Reynolds prior to her trial thereon, or at any other time, and because of such failure that entire proceeding was and is void. The fallacy of that argument consists in the fact that it is admitted that the court examined that record (and which fact is shown by the stenographer's testimony if we were permitted to consider it) and the presumption in favor of his judgment (the one appealed from) authorizes us to conclude that the 1936 record did contain the requisite summons or notice, and its due execution, in the 1936 proceedings. However, it is not essential that the record in which an attacked judgment was rendered should on a direct attack thereof affirmatively show the contested fact of the issuing of a summons therein, and its service upon the party to be affected when, as here, it is alleged that there was such a summons and its service at the time the judgment *was* rendered; but that it had become lost from the papers, and the clerk of the court failed to make any record thereof in any book containing a record of the proceedings, whatever they might have been.

In other words, the issue in this case finally came down to the point, as argued by counsel, of whether or not a summons was actually issued for Mrs. Reynolds and her then committee (whether legally appointed or not, but who had custody of her person) and served before the 1936 inquisition was held? Such an issue may be inquired into by evidence aliunde the record, since it is not an effort to contradict the record, but its purpose is to show what the actual record contained at the time the attacked judgment was rendered, but some

portion of which was lost. If the clerk failed to make a record of the fact that a summons was issued and to make any record of its return, his negligence would not affect the validity of the judgment, provided a summons was issued and served as the law directs, since the parties are not chargeable with his neglect. Evidence, therefore, to show what was originally in and formed a part of the record is not in contradiction of the record as made by the clerk, but has the effect only of pointing out his failure to enter of record what did in fact happen. That proposition is not denied by counsel for appellant; but, on the contrary, is admitted by him when he says in his brief: "So far as I know, it is all that is in there. * * * About that summons: I dont know whether it has ever been in here, or whether it has been in here, and whether it has been lost, or not. * * *. If a summons was actually issued by the clerk and served by the sheriff and a proper return made, then the insane person was before the court whether the summons and return were lost or not."

Cases establishing the principle of permitting parol proof to establish lost records are: Commonwealth v. Keger, 1 Duv. 240; Suggett v. Bank of Kentucky, 8 Dana. 201; Mayo v. Emery, 103 Ky. 637, 45 S. W. 1048, 20 Ky. Law Rep. 638; Farrow v. Orear, 2 Duv. 261, and others cited in the notes to Sections 3991 and 3994 of our present statute. Also the text in 22 C. J. under the heading of "Evidence," Sections 1317 and 1318, on pages 1029 and 1031 of that volume. The cited authorities affirm the propositions that lost papers may be supplied by evidence aliunde the record and their contents shown by like proof. Direct authority—not rested on analogy—for the admission of parol testimony to supply a lost record or parts thereof is found in the text in 53 C. J. page 640, Section 61, and the case of Bullock v. Commonwealth, 96 Ky. 537, 29 S. W. 341, 16 Ky. Law Rep. 621. In the Bullock case the entire record of an examining trial was lost. The surety on the bond of the culprit involved therein resisted payment on forfeiture of the bond on the ground that there was no record of any proceedings containing an order requiring the giving of such an appearance bond. But in the trial of the forfeiture proceedings it was proven by parol that the requisite examining proceedings were had, as well as the contents thereof, and all of which was done—not by an

independent action to establish a lost record as provided for in the sections of our statute supra, but in the trial of the forfeiture proceedings in which the question was raised and relied on, and which is the situation in this case. The action of the trial court in admitting that proof was approved by this one. Were it otherwise, and a lost record could only be established by an independent action for that purpose, then the proceedings in which the question was presented would have to be postponed until such an independent action could be filed and finally disposed of; but even in such a case the question of the competency of parol proof to establish the existence (and possibly contents) of the lost record would necessarily arise.

Under the contention of appellant no such proof could be heard, unless there was something *in the record* indicating that the alleged lost record was at one time in existence, and which is tantamount to saying that no proof thereof may be heard if some officer neglected to perform his duty and thereby failed to record the "indication" as a prerequisite to the admission of such proof, although his omission was not such as to charge the litigant therewith. The contention of appellant, therefore, becomes illogical, unreasonable and demonstrably unjust.

If we were permitted to consult what is said to be the evidence heard at the trial of the instant motion of appellant we would be compelled to conclude, as did the trial court, that a summons was issued for Mrs. Reynolds and served upon her in the 1936 proceedings. However, since the evidence may not be considered for the reason hereinbefore stated (the testimony not having been made a part of the record) we will not attempt to refer to it in detail but content ourselves with the conclusion we have reached from consulting it.

Wherefore, for the reasons stated, the judgment is affirmed.

The whole Court sitting, except Judge Perry, who is absent.